PEOPLE ex rel. HACKETT v. BINGHAM, Police Com'r.

(Supreme Court, Appellate Division, Second Department. June 5, 1908.)

MUNICIPAL CORPORATIONS—OFFICERS—POLICEMEN—REMOVAL—EVIDENCE—SUF
FICIENCY.

Evidence held insufficient to sustain the removal of a policeman for neglect of duty and conduct unbecoming an officer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 503.]

Certiorari by the people, on the relation of George W. Hackett, against Theodore A. Bingham, as police commissioner of the city of New York, to review his action in dismissing relator from the police service. Proceedings reversed, and relator restored to his position.

Argued before WOODWARD, JENKS, HOOKER, MILLER, and GAYNOR, JJ.

Jacob Rouss (Louis J. Grant, on the brief), for relator.
James D. Bell, for respondent.

WOODWARD, J. The relator was called upon to answer to charges of neglect of duty and of conduct unbecoming an officer, the following specifications being furnished: (1) That relator, having ar-

rested one William H. Stanley on a charge of intoxication at about 8:30 p. m., June 12th, failed to report to Sergt. McGuire, on desk duty at the time, that Stanley had reported to him (relator) the loss of his pocketbook, containing $40 in money and three pawn tickets. (2) That relator, having received on the morning of June 13th from one Nicolo Giammalva the pocketbook, containing $40 in money and three pawn tickets found by said Giammalva, etc., on the evening of June 12th, neglected either to make a report of the occurrence or to return said pocketbook and contents to the sergeant at the desk at said station house on said day. (3) That relator, when questioned by Capt. Harkins, his commanding officer, regarding the property of said Stanley, admitted having received the pocketbook containing $40 in money and returned the same, but denied having received the pawn tickets, which statement he (relator) well knew to be untrue.

Upon the trial it appeared from the evidence, and it is not seriously questioned, that the relator arrested William H. Stanley on the date mentioned upon a charge of intoxication; that Stanley was too drunk to have any intelligent appreciation of his situation; that on the following morning the relator appeared before the magistrate and Stanley was convicted of the charge of intoxication and fined $10, which he paid and was discharged; that after the discharge, and at parting with the relator, Stanley for the first time mentioned the loss of his pocketbook, which contained two $20 bills, and, he thought, three pawn tickets; that relator told Stanley that he thought he could recover the pocketbook; and that Stanley requested the relator, in the event that he secured possession of the same, to hold it until Stanley should call for it. It likewise appeared from the evidence that on the evening of the arrest of Stanley, and shortly after the same, a boy came to the relator and told him that he had seen a man drop something in front of the barber shop which looked like a pocketbook, and that the barber had picked up the same. The relator went to the barber shop and made inquiries, but was told that the proprietor was the one who knew about it, and that he was out. The next morning, after the discharge of Stanley, the relator, with a brother officer, went to the barber shop and made inquiries about the pocketbook, and the barber turned it over to the relator. The pocketbook, on its delivery to the relator, did not contain the three pawn tickets which Stanley supposed were in it when lost, as appears by the undisputed evidence. The relator sent notice to Stanley that he had secured the pocketbook, and then, in harmony with his understanding with Stanley, he placed it in his pocket to hold until it should be called for. Subsequently a rumor reached the ears of the commander of the station, and upon an investigation he called the relator in and asked about the matter. The relator frankly admitted that he had the pocketbook, and delivered it to the proper officer. He is fully corroborated in his story by Stanley, who, having been arrested by him, had no special reason for being friendly, and by those who were involved; and just how the relator could have been guilty of any of the charges or specifications, in such a manner as to justify his removal, is more than we are able to discover.

It is true that the relator did not report the claim of Stanley that he had lost the pocketbook at the time of the arrest, for the very good reason that Stanley made no such claim. He did not mention it until after he was discharged from custody. It is true that the relator received the pocketbook as stated, but it is not true that it contained the three pawn tickets; and the relator had a perfect right, as the agent of the owner, to receive the pocketbook and to hold it until called for. It is probably true that it would have been the better practice to have mentioned the matter; but there is no rule of the department called to our attention which made it his duty to do so under the circumstances disclosed at the trial. The pawn tickets concededly not having been in the pocketbook when the relator received it, and there being no direct evidence that they were even in the pocketbook when Stanley lost the same, the relator was certainly justified in denying that the pawn tickets were received by him, and the evidence produced did not convict him of a denial, knowing to the contrary. Indeed, the evidence is conclusive that the charges, in so far as they indicate any lack of integrity or good faith on the part of the relator, are not true, and yet he has been removed from his position upon charges which reflect upon him in his official capacity. The trial, in its result, is a farce, and there is no justification for the order of dismissal.

The proceedings of the respondent should be reversed, and the relator restored to his position.

Proceedings reversed, and relator restored to his position, with $50 costs and disbursements. All concur.